IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TERESA K. COX, ) | |
| ) | CIVIL ACTION NO. 0:07-377-GRA-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) alleging disability as of March 14, 2003 due to asthma, laryngitis, depression, weakness, and hyperventilation. (R.pp. 46-48, 56). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on June 6, 2006. (R.pp. 278-316). The ALJ thereafter denied Plaintiff's claim in a decision issued August 24, 2006. (R.pp. 13-23). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 7-10).



The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



**Discussion**

A review of the record shows that Plaintiff, who was thirty-nine (39) years old when she alleges she became disabled, has a high school education with past relevant work experience as a receptionist, administrative assistant, inventory clerk, and stocker. (R.pp. 30-31, 46, 57, 62, 65-72, 74-81, 281-282, 310-311). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from severe impairments which render her unable to perform her past relevant work, she nevertheless retains the residual functional capacity to perform a limited range of medium work[1] and is therefore not disabled. (R.pp. 17, 21-23).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly assess the treating and evaluating physicians' opinions, by failing to properly assess Plaintiff's mental impairments and by not explaining his findings regarding the Plaintiff's residual functional capacity, and by failing to properly assess Plaintiff's credibility. However, after careful review and consideration of the arguments and evidence presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

---

[1]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



**I.**

The medical record confirms that Plaintiff suffers from asthma, with treatment records for this condition dating back as far as 1995. However, this condition was never disabling, as Plaintiff continued to work throughout this period until 2003. See generally, (R.pp. 101-102, 111-115, 139-150, 283). As for Plaintiff's condition following her alleged disability onset date (March 14, 2003), her medical records reflect that she continued to receive treatment for her asthma and that, while this ailment could cause shortness of breath and sometimes resulted in mild airway obstruction, it did not impair her ability to work as long as she avoided concentrated exposure to temperature extremes, odors, dust, gases, and poor ventilation. See generally, (R.pp. 117-127, 131-138, 167-174, 195-202, 225-230, 252-253, 255, 259, 262-263). See also Orrick v Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability]; Melton v. Barnhart, No. 03-10053, 2003 WL 21976088 at *4 (S.D. Iowa Aug. 4, 2003); Michaels v. Apfel, 46 F.Supp.2d 126, 137-138 (D.Conn. 1999).

After review of this medical evidence, the ALJ determined that Plaintiff could perform work at the medium level of exertion (lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds) in an environment free from poor ventilation, dust, fumes, gases, odors, and extremes of humidity and temperature. (R.p. 17). Plaintiff complains that in making these findings the ALJ did not properly evaluate and consider the opinion of her treating pulmonary physician, Dr. Nicholas Sanito   The undersigned does not agree. The record reflects that on April 28, 2004 Dr. Sanito issued a "to whom it may concern" letter in which he opined that Plaintiff was unable to hold a job and was "medically and psychiatrically Disabled."

4



(R.p. 131). With respect to Plaintiff's asthma, however,[2] Dr. Sanito noted that her asthma was "usually well-controlled" with only occasional "flare up[s]" requiring adjustments in Plaintiff's medications and/or office visits. Id. The ALJ noted in his decision that this statement was generally supported by Sanito's treatment notes and was "generally accurate according to the record." (R.p. 21).

Plaintiff's main objection to the ALJ's treatment of Dr. Sanito's opinion with respect to the seriousness of her asthma condition relates to a functional capacity assessment completed by Dr. Sanito on November 5, 2004. (R.pp. 225-230). This assessment included the restrictions on exposure to fumes, gases and chemicals which were accepted by the ALJ in his decision, and noted that Plaintiff was capable of walking up to two blocks at a time without resting. However, Dr. Sanito also made additional findings such as that Plaintiff was unable to sit for more than fifteen minutes at a time as well as other postural limitations (for example, only being able to sit for less than two hours in an eight hour work day and never being able to lift over twenty pounds), which were rejected by the ALJ as not being supported either by Dr. Sanito's own treatment notes or by the overall record. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion justified where treating physician's opinion was inconsistent with substantial evidence of record]. The undersigned does not find any reversible error in this decision, as Dr. Sanito's medical records do not support a finding that Plaintiff's asthma would result in any such severe physical limitations. (R.pp. 133-138, 251-257).

Further, two state agency physicians who reviewed Plaintiff's medical records in March 2004 and again in August 2004 both found that Plaintiff had *no* lifting or postural limitations,

---

[2]Plaintiff's psychiatric problems are discussed later in this Report and Recommendation, infra.



noting only Plaintiff's need to avoid areas containing fumes and gases as previously noted. (R.pp. 167-174, 195-202). The ALJ gave these opinions substantial weight since they were supported by the overall evidence of record, which he was entitled to do under the applicable caselaw. (R.p. 18). See Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]; see also SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims]. Plaintiff's argument that the ALJ erred in his evaluation of this evidence is without merit.

**II.**

Plaintiff's main argument for disability is based not on her asthma or other physical infirmities, but on her severe mental impairment, which is well documented in the record. Even Dr. Sanito, who as noted is a pulmonologist, appears to substantially base his opinion of disability on Plaintiff's mental impairment. See (R.pp. 131, 225-226, 230). Of course, Dr. Sanito is not an expert in this area, but medical evidence from mental health professionals is part of the record in this case.

Plaintiff was seen from March 2004 through June 2004 by a nurse practitioner, Michelle Knapik-Smith, who served as a mental health counselor. Nurse Knapik-Smith's treatment records reflect not just that Plaintiff suffered from depression and anxiety, but also that Plaintiff was taking large amounts of over-the-counter stimulants (up to ninety (90) pills per day), for which Plaintiff refused any efforts at detoxification. Nurse Knapik-Smith diagnosed Plaintiff with



substance dependence with a poor prognosis, and assigned her a GAF score of 50.[3] (R.pp. 159-164).

Nurse Knapik-Smith completed a medical assessment of Plaintiff's mental ability to perform work related activities on November 3, 2004 in which she opined that Plaintiff had a fair ability to remember work like procedures and to maintain regular attendance, and a good ability to understand and remember very short and simple instructions, carry out such instructions, and maintain attention for two hour segments. She also rated Plaintiff as having a good ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others, ask simple questions or request assistance and accept instructions and respond appropriately to criticism, and be aware of normal hazards and take appropriate precautions, while she had a fair ability to make simple work related decisions, perform at a consistent pace, respond appropriately to changes in a routine work setting, and deal with normal work stress. Nurse Knapik-Smith opined that Plaintiff had poor or no ability to complete a normal work day and work week without interruptions from psychologically based symptoms, or to get along with co-workers or peers. Finally, Nurse Knapik-Smith opined that Plaintiff had a good ability to understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, interact appropriately with the general public, and adhere to basic standards of neatness and cleanliness, with a fair ability to deal with the stress of semi-skilled and skilled work, maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation. Nurse

---

[3]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).



Knapik-Smith also believed that Plaintiff suffered from a panic disorder which would limit her ability to engage in work situations. (R.pp. 221-224).

Plaintiff was also examined by Dr. David Steiner, a psychiatrist, on March 16, 2004, who found Plaintiff to be alert and oriented to person, place and time with an intact memory. Plaintiff exhibited poor concentration and was "uncomfortable" and tense during the examination, and Dr. Steiner opined that Plaintiff "may well have generalized anxiety disorder" with major depression and a GAF of 46. (R.pp. 128-130). Plaintiff's medical records were thereafter reviewed on March 25, 2004 by Dr. Samuel Goots, a psychologist, who found that Plaintiff was not significantly limited in her ability to understand and remember instructions in work like procedures, to carry out short and simple instructions or work in coordination with or proximity to others without being distracted by them, to make simple work related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism, get along with co-workers or peers, maintain socially appropriate behavior, and be aware of normal hazards and take appropriate precautions. Dr. Goots further found that Plaintiff was only moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, sustain an ordinary routine without special supervision, complete a normal work day and work week without interruptions, interact appropriately with the general public, and respond appropriately to changes in the work setting. Dr. Goots believed Plaintiff would be able to function best in a low stress environment with limited contact with the general public. (R.pp. 217-220). <u>See also</u> (R.pp. 203-216).

Plaintiff's medical records were also reviewed by another psychologist, Dr. Lisa Klohn, on August 26, 2004. With some minor variations, Dr. Klohn's findings were the same as Dr.



Goots'. (R.pp. 189-191); see also (R.pp. 175-188). Significantly, Dr. Klohn also noted that it was quite possible that Plaintiff's panic attacks were actually being induced by her abuse of pills and stimulants.[4] Even so, she did not believe Plaintiff's mental impairment precluded the performance of unskilled work. (R.p. 187).

On January 13, 2006, Plaintiff presented to Dr. Gregory Smith, a psychiatrist, with complaints of depression. Dr. Smith had been seeing Plaintiff at his mental health center since at least early 2005. (R.pp. 247-248). Plaintiff advised Dr. Smith that she had been "feeling pretty good up until this week....". Dr. Smith found on examination that Plaintiff was alert although anxious, that her thoughts were logical and goal directed, and that her insight and judgment were "fine". He assigned Plaintiff a GAF of 60.[5]

The ALJ reviewed the medical evidence relating to Plaintiff's mental health and concluded that Plaintiff's mental impairment would result in moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace; with no periods of decompensation. (R.p. 18). In making these findings, the ALJ noted that Plaintiff's medical records generally describe her as being alert, oriented, and in no distress; that her condition had generally been managed with medication from her treating physicians with no evidence of emergency room visits or psychiatric hospitalizations; and that Plaintiff testified at the hearing that she has no chronicled side effects from

---

[4] Plaintiff appeared to testify at the hearing that she is no longer addicted to the over-the-counter diet pills referenced by Nurse Knapik-Smith in her treatment notes. (R.p. 290).

[5] A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).

9



her mental health medications. (R.pp. 18, 20).[6] Again, the undersigned does not find any reversible error in the ALJ's findings and conclusions. The ALJ's findings specifically track the findings of the state agency physicians; see (R.pp. 185, 213); to which he gave substantial weight as being supported by the overall evidence of record. (R.p. 18). See SSR 96-6p [agency physicians are experts in the evaluation of medical issues for purposes of disability claims]; Johnson, 434 F.3d at 657 [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]. The ALJ also referenced the records from Dr. Smith, who was definitely an examining physician, and whose treatment of the Plaintiff over time could even qualify him as a treating physician for purposes of this decision. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ made properly give significant weight to assessments of examining physicians].

While Plaintiff complains that the assessments of Dr. Steiner and Nurse Knapik-Smith reflect more severe limitations than found by the ALJ, the medical records of these two medical providers also contain findings and opinions consistent with the ALJ's decision.[7] The ALJ was not required to accept the more severe limitations found by some of the medical professionals in this case to the exclusion of the other evidence. Rather, he properly exercised his authority by evaluating and weighing *all of the medical evidence* in reaching his decision. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. Nor was the

---

[6]The ALJ noted that Plaintiff had testified to one side effect; that she had a "shaking" side effect from medications, but did not know a specific medication that caused it. The ALJ found, however, that Plaintiff's medical records do not show that she has ever reported this alleged side effect, and that her failure to have reported this side effect "does not bolster the [Plaintiff's] assertion." (R.p. 18).

[7]Additionally, as a nurse practitioner, Knapik-Smith's findings and conclusions, while considered, are not entitled to the same weight as records and opinions from physicians. Cruse v. Commissioner, __ F.3d __, 2007 WL 2752888 at *8 (6th Cir. 2007); Mesinger v. Astrue, No. 06-1313, 2007 WL 2225942 at *5 (D.Kan. July 31, 2007); Davis v. Massanari, No. 00-6211, 2001 WL 34043759 at *6 (D.Or. Aug. 15, 2001).



ALJ required to accept Dr. Sanito's conclusory statement that Plaintiff was disabled from work. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"].

The undersigned can find no reversible error in the ALJ's evaluation of the medical evidence with respect to Plaintiff's mental impairment in this record. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations].

### III.

With respect to Plaintiff's RFC, the decision reflects that the ALJ thoroughly discussed the medical records and findings of Plaintiff's physicians, the state agency physicians, as well as Plaintiff's own testimony, noting both the physical and mental findings as reflected in the medical evidence, the effectiveness of her treatments, and that his findings were based on the medical evidence and why. The ALJ also properly found that Plaintiff could not return to work in her past occupations, primarily because of her mental limitations and need to be restricted to simple, routine work in a low stress job[8] and in an environment free from poor ventilation, but that she was not totally disabled from all work. This review, discussion and analysis satisfied the requirements of SSR 96-8p. *Cf.* Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buchholtz v.

---

[8]*Cf.* Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress].

11



Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002). Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is without merit. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd, 117 Fed.Appx. 896 (4th Cir. Jan. 5, 2005).

## IV.

Plaintiff's final argument that the decision should be reversed because the ALJ conducted a flawed credibility analysis is also without merit. The ALJ reviewed Plaintiff's testimony regarding the nature and extent of her limitations and compared this testimony with Plaintiff's activities and the objective medical evidence in finding that her testimony was not entirely credible. In addition to thoroughly reviewing the objective medical evidence, the ALJ noted Plaintiff's claim of a side effect from medication that was not reflected in the medical evidence, that she also testified that she had no other side effects from her medications, and that she was able to drive herself to all of her appointments. He also noted that Plaintiff had primarily received routine, conservative treatment for her conditions.

After a review of the decision and the record in this case, the undersigned does not find that the ALJ conducted an improper credibility analysis, or that his decision otherwise reflects a failure to consider the combined effect Plaintiff's impairments had on her ability to work. See Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Hunter 993 F.2d at 35 [ALJ may properly

12



consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Cruse v. Bowan, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; *cf.* Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) [ALJ properly considered whether claimant's impairments in combination were disabling by separately discussing claimant's impairments]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]. This argument is without merit.

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion



of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

November 6, 2007

